## IN THE OREGON TAX COURT

VANDERMAY,
dba Vanwest Oil Company
*v.*
DEPARTMENT OF REVENUE
(TC 2553)

Roy D. Lambert, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Oregon, represented plaintiff.

Marilyn Harbur, Assistant Attorney General, Department of Justice, Salem, Oregon, represented defendant.

Decision part for plaintiff and part for defendant rendered November 6, 1987.

**CARL N. BYERS, Judge.**

This appeal concerns the value of two service stations, one in Astoria and one in Seaside, for the tax years 1984-85 and 1985-86. The respective appraisers agreed that no significant changes occurred in the market from January 1, 1984 to January 1, 1985, and therefore established a single value for each property.

Plaintiff's appraiser first testified as to some general economic trends and conditions of the automobile service station market as affected by the changes in the petroleum industry. Beginning with the Arab embargo, he noted changes in

the way major oil companies market their products. These changes resulted in a significant decrease in the number of gas stations and a change in their character. For example, it is now necessary to distinguish between a "service station" and a "gas station," which may dispense gas and also act as a convenience grocery store. The appraiser also noted increased environmental concerns about petroleum tank leaks and the resulting risks associated therewith. From these observations, he concluded that the market price of a service station "has very little relationship to the cost to build new." (Exhibit 4, at 8.) This conclusion led him to focus on land value rather than to make a direct comparison of comparable sales. In attempting to establish land value as the foundation for his appraisal, he further weakened his appraisal by extracting land values from sales of improved properties. As a consequence, his residual land value analysis adds little to his opinion. Despite this error, the court was impressed with this appraiser's perspective and perceptions of the industry.

Plaintiff's appraiser also applied an income approach and a cost approach. His income approach used a 12 percent return on improvements, a 8.75 percent return to land and the market income realized by lessees of service station properties under triple net leases. In this regard the appraiser would exclude any major oil company percentage leases, which tie lease payments to the amount of gasoline or petroleum products sold.

Both appraisers utilized a cost approach based on costs obtained from the department's cost factor books. Utilizing the same cost factor books, plaintiff's appraiser estimated the Astoria improvements cost new before depreciation of $140,139, while defendant's appraiser estimated a cost new before depreciation of $147,904. This difference widened after the deduction for depreciation, plaintiff's appraiser arriving at a depreciated cost of $16,816 and defendant's appraiser arriving at a depreciated cost of $46,000. The primary difference between the two appraisers in their depreciated values is the deduction of economic obsolescence by plaintiff. For the Astoria service station, plaintiff's appraiser allowed economic obsolescence of 33 percent, which translates into a deduction of $46,246. Defendant disputes that there is any economic obsolescence present in the industry.

■ Neither party established economic obsolescence by virtue of detailed market data. While there are comparable sales of service stations available, the economic obsolescence perceived by plaintiff's appraiser is inherent in the industry and not limited to geographical location. Thus, from plaintiff's point of view, it is not possible to compare sales from one area with sales in another in order to establish economic obsolescence. In this case the comparable market sales do indicate that service stations generally suffer some form of economic obsolescence when compared with their cost to construct. Although this economic obsolescence may not be precisely measurable, its presence would indicate that little weight should be given to the cost approach in the reconciliation process.

As indicated above, defendant's appraiser utilized a cost approach as well as the direct market or sales comparison approach. He did not attempt an income approach because he did not feel that the income and expense information available was reliable.

Defendant's appraiser placed the greatest weight on the direct market comparison method.[1] Both appraisers used the two Astoria comparable sales and defendant's appraiser used a third Seaside comparable. The primary and most direct comparable for both subject properties, was a service station at 460 West Marine Avenue in Astoria purchased by plaintiff in 1983 for $100,470. (For brevity hereinafter referred to as the "460 West Comparable.") The second most comparable sale was the Texaco service station located at 452 West Marine Drive in Astoria, which sold in April, 1984, for $100,000 ("Texaco Comparable"). The third comparable was a service station in Seaside (compared only to the subject Seaside station) which sold in September, 1985, for $96,000 ("Seaside Comparable"). The court finds that these three comparable sales are the best indications of value for the subject service stations.

*The Astoria Property.*

The Astoria service station is located on the east edge of downtown Astoria. It has a favorable location on the main

---

[1] In his original report submitted at the administrative hearing, defendant's appraiser gave the cost approach the greatest weight. However, by his addendum of September 8, 1987, he places the greatest reliance on the market approach.

highway leading to Portland, and is close to commercial businesses and tourist attractions. The improvements consist of a quality metal building with brick trim approximately fifteen years old. The station is in good condition and is attractive. The most direct comparable sale is the 460 West Comparable. Although not as new or in as good condition as the subject, it would attract and serve essentially the same type of customers. While the subject improvements are larger, both appraisers indicated that the subject was "overbuilt." The subject land area is also larger than the 460 West Comparable. These general characteristics lead the court to conclude that the subject is larger and better than the 460 West Comparable. However, most of this gain is offset by the better location of the 460 West Comparable as evidenced by the higher traffic count and higher number of gallons sold. Defendant also points out that the 460 West Comparable sale did not include some tanks, pumps and other equipment.

Defendant's appraiser appeared to apply the 460 West Comparable sale with reluctance. He questioned whether the sale was arm's-length and representative of the market. However, the preponderance of the evidence indicated that specialized properties such as service stations, if they are to continue to be operated as such, are sold to a specialized segment of the real estate market. Further, there was no evidence to support the defendant appraiser's suspicions that major oil companies, after depreciating the improvements on their books, would not attempt to maximize their return by selling the property for fair market value. The court finds that the 460 West Comparable sale was an arm's-length transaction.

Defendant's appraiser also adjusted the 460 West Comparable sale improvements upwards 30 percent and the land down by a net of 2 1/2 percent. The adjustments on the improvements appear to be in error. As developed by plaintiff through cross-examination, it would be error to apply a 30 percent difference between the subject improvements and the comparable improvements to the whole of a purchase price since this would attribute part of the difference to the land. (See Exhibit 7.) On the other hand, if the adjustment was based on the effect the difference in the improvements would have on the total purchase price, as the appraiser indicated in

his response to the questions of the court, such a determination is not supported by the evidence. A 30 percent increase in a sale price of $100,470 translates into an adjustment of over $30,000. The evidence did not justify such an adjustment, particularly where defendant's own appraiser considered the subject property to be "overbuilt."

When the subject property is compared to the Texaco Comparable, the subject appears to be slightly better. In correlating these impressions and findings with the cost approach of each appraiser, the court finds that it is not satisfied with either appraiser's conclusions with regard to land value. Defendant's adjustments result in a land value too high and plaintiff's comparable land sales are questionable. Based on the evidence, it appears to the court that $4 per square foot appears to be the appropriate land value for the subject. Based on the evidence adduced, the court finds a value of $105,000 for the subject Astoria station, which should be allocated as follows: $21,000 for the improvements and $84,000 for the land.

*The Seaside Property.*

The subject Seaside station is located at the south end of the city on Highway 101. This property is similar to the Astoria property in many ways. The land size is very close and has a comparably favorable location. It seems clear however, that the Seaside station is "lesser" in several respects. It is smaller and of lesser quality construction. The subject's canopy over the pump area is too low for some recreational vehicles and trucks. The appraisers also indicated that the land has a lesser value in this area. Plaintiff's appraiser estimated the land value at $3.50 per square foot while defendant's appraiser estimated it at $3.90 per square foot. Comparing the subject to the three comparable sales, it appears to have a value somewhat less than the 460 West Comparable and somewhat more than the Seaside Comparable. Although the subject sells less gas than the 460 West Comparable and the subject Astoria station, and therefore probably less than the Texaco Comparable, the improvements appear to be superior to the Texaco Comparable. On the whole, the court finds that the subject is most like the Texaco Comparable and therefore has a true cash value of $100,000. Based on the land value estimated by defendant's appraiser of $3.90 a square foot,

$81,000 should be allocated to land and $19,000 to improvements.

■      The values determined for the subject properties as indicated above, shall be applied to both years under appeal without adjustment. Judgment will be entered consistent with this opinion. Costs to neither party.